IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
At Greenbelt

| | | |
|---|---|---|
| IN RE: | * | |
| ALIGNED DEVELOPMENT LLC, | * | Case No. 24-11929 |
| | * | |
| Debtor | * | (Chapter 11) |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DEBTOR'S DISCLOSURE STATEMENT
(July 5, 2024)

Aligned Development LLC ("ALIGNED"), Debtor herein, submits the following as its Disclosure Statement.

Introduction, Purpose, and Use of this Document

This Disclosure Statement is a prerequisite to the solicitation of acceptance of the Debtor's Plan of Reorganization submitted and dated of even date herewith ("the Plan"). The purpose of the Disclosure Statement is to furnish the holders of Claims and Interests with information that, as far as is reasonably practicable under the circumstances, will enable them to make an informed judgment about the Plan.

***ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD NOTE THAT NO REPRESENTATION CONCERNING THE DEBTOR, ITS BUSINESS, OR THE VALUE OF ITS PROPERTY HAS BEEN AUTHORIZED OR WILL BE AUTHORIZED OTHER THAN AS SET FORTH IN A DISCLOSURE STATEMENT WHICH HAS BEEN FINALLY APPROVED BY THE COURT OR WHICH HAS***

*BEEN PROVISIONALLY APPROVED, SUBJECT TO POSSIBLE FINAL APPROVAL AT THE TIME OF THE HEARING ON CONFIRMATION OF THE PLAN. ANY REPRESENTATION OR INDUCEMENT OTHER THAN ONE INCLUDED WITHIN SUCH A DISCLOSURE STATEMENT, MADE TO SECURE AN ACCEPTANCE OF A PLAN OF REORGANIZATION IN THIS CASE, IS UNAUTHORIZED, IMPROPER, AND SHOULD NOT BE RELIED UPON. IF AN UNAUTHORIZED REPRESENTATION IS MADE TO OBTAIN ACCEPTANCE OF A PLAN, IT SHOULD BE REPORTED IN WRITING TO THE UNDERSIGNED COUNSEL FOR THE DEBTOR, WHO WILL IN TURN MAKE IT KNOWN TO THE COURT FOR SUCH ACTION AS THE COURT MAY DEEM APPROPRIATE.*

*THE VALUATION INFORMATION FOR THE DEBTOR'S PROPERTY PROVIDED HEREIN WAS DERIVED FROM AN APPRAISAL, THE CONCLUSION OF WHICH IS DESCRIBED HEREIN. COSTS OF SALE ARE NOT TAKEN INTO ACCOUNT IN THIS VALUATION BUT ARE CONSIDERED IN THE LIQUIDATION ANALYSIS. THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.*

<u>Voting Instructions; Solicitation of Acceptances</u>

Enclosed with this Disclosure Statement, if it has been approved, is a ballot, provided so that Creditors may vote either for or against the Plan, along with a stamped envelope for your convenience. *IF THE COURT HAS SCHEDULED A HEARING*

*ON CONFIRMATION, PLEASE NOTE THAT THE ORDER SCHEDULING THE HEARING ALSO SETS A DEADLINE FOR THE FILING OF BALLOTS AND THAT BALLOTS, TO BE COUNTED, MUST ACTUALLY HAVE BEEN RECEIVED BY THE UNDERSIGNED COUNSEL ON OR BEFORE THAT DEADLINE, AS OF 5:00 P.M. EASTERN TIME, REGARDLESS OF POSTMARK OR DATE OF TRANSMITTAL.  <u>LATE RECEIVED BALLOTS WILL NOT BE COUNTED.</u>*

*IN ORDER TO BE COUNTED, BALLOTS MUST BE SENT TO RICHARD BASILE ESQUIRE, 6305 IVY LANE, SUITE 510, GREENBELT, MD 20770. <u>BALLOTS SHOULD NOT BE SENT TO THE COURT, AND BECAUSE THE OFFICE IS NOT FULLY MANNED AT ALL TIMES, NO SIGNATURE SHOULD BE REQUIRED FOR DELIVERY.</u>*

Subject to the specific provisions of 11 U.S.C. Section 1124, a Creditor whose claim is impaired is deemed to include any Creditor who will receive less than full cash payment for the allowed amount of its Claim or whose pre-petition rights have otherwise been altered in any way by the provisions of the Plan. Claims of certain Creditors may be disputed by the Debtor. The holders of disputed Claims may vote for or against the Plan only to the extent that their Claims have been allowed for the purposes of voting. Similarly, the holders of Claims which have been scheduled by the Debtor or filed with the Court and have been designated as contingent or unliquidated may vote only to the extent that their Claims have been allowed by the Court for the purpose of voting.

The ballot included with this Disclosure Statement, if any, *IS NOT A PROOF OF CLAIM AND WILL NOT BE TREATED AS SUCH FOR PURPOSES OF*

3

***VOTING OR OTHERWISE.*** The schedules of Claims against the Debtor may be inspected at the Bankruptcy Court or online utilizing PACER.

***ONLY THOSE VOTES THAT ACTUALLY ACCEPT OR REJECT THE PLAN WILL BE COUNTED.***

A Class of Creditors is deemed to have accepted the Plan if the Plan has been accepted by the Holders of at least two thirds in dollar amount and a majority in number among the Holders allowed for the purposes of voting, ***WHICH ACTUALLY VOTE ON THE PLAN.***

At the hearing on Confirmation, the Bankruptcy Court will receive and consider a ballot report which will be prepared by the undersigned counsel concerning the votes received for acceptance or rejection of the Plan by the parties entitled to vote thereon. The Court will also then consider whether or not the Plan satisfies the various requirements of the Bankruptcy Code, including its feasibility and whether it is in the best interests of Creditors.

With respect to each impaired Class of Claims, in order to confirm a Plan, the Court must find that each holder of a Claim allowed for purposes of voting or of an interest in such Class has accepted the Plan or else that each such holder will receive or retain on account of its Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than that holder would receive if the Debtor were liquidated under the provisions of Chapter 7 of the Bankruptcy Code, on the Effective Date. The Court may confirm the Plan even if the Plan is not accepted by all of the impaired Classes, provided that the Court finds that the Plan was accepted by at least one impaired

4

Class (not counting the votes of insiders) and that it does not discriminate unfairly against, and is fair and equitable to, all non-accepting impaired Classes.

The Debtor intends to rely on these "cram down" provisions, if necessary, in seeking confirmation of the Plan.

The Debtor believes that the Plan is feasible, fair, and equitable, and in the best interests of Creditors and the Debtor, and that the Plan does not discriminate unfairly. Accordingly, the Debtor recommends that you *VOTE FOR THE PLAN.*

*THIS DISCLOSURE STATEMENT, INCLUDING THE PLAN, SHOULD BE READ IN ITS ENTIRETY. THE WORDS DEFINED IN ARTICLE I OF THE PLAN, WHEN USED IN THIS DISCLOSURE STATEMENT, CARRY THE SAME MEANING GIVEN TO THOSE TERMS BY THE DEFINITIONS IN ARTICLE I OF THE PLAN. FURTHERMORE, AT THE TIME OF FILING, THIS DISCLOSURE STATEMENT CONSTITUTED ONLY A "PROPOSED" DISCLOSURE STATEMENT. UPON APPROVAL BY THE COURT, A DISCLOSURE STATEMENT BECOMES AN "APPROVED DISCLOSURE STATEMENT." UNLESS THE COURT SPECIFICALLY AUTHORIZES TO THE CONTRARY, ONLY AN "APPROVED DISCLOSURE STATEMENT" MAY BE GENERALLY DISSEMINATED TO CREDITORS IN CONJUNCTION WITH THE SOLICITATION OF ACCEPTANCES OF A PLAN.*

## I. GENERAL INFORMATION AND EVENTS WHICH LED TO FILING

Aligned Development LLC is an entity created by Alexander Lyles as an ownership vehicle for renovation, development and sale of a townhome located at 1815 8th Street NW, Washington DC 20001, (the "Property").

The Debtor obtained a construction loan for renovation of the Property in the amount of $1,098,000.00, (the "Note"), from Washington Capital Partners on June 30, 2022, which was secured by a Deed of Trust in the amount of $770,900.00 recorded in the District of Columbia. $770,900.00 was disbursed at loan closing and the remainder of $327,100 was designated as available for interest and construction soft and hard costs, (hereinafter called the "Reserve"). The initial interest rate was 8% with default interest payable at 24%.

Soft costs included architectural, design, mechanical, drawings & design, electrical drawings, & designs, plumbing drawings and designs, foundation drawings and designs, and DCA approvals and permit costs. Hard cost were for the actual hard construction costs of physical construction.

Shortly after the Washington Capital Partners loan closing, Washington Capital Partners transferred it's loan to Pacific RBLF Funding Trust, (the "RBLF") and Washington Capital Partners became the loan servicer.

The Property has appraised renovated value of $1,600,000.00 by Chessie Appraisals, LLC of Pasadena Maryland. See said appraisal dated June 14, 2022 attached hereto as Exhibit A. The appraiser was the appraiser chosen by the Washington Capital Partners but paid for by the Debtor. The appraisal shows comparable properties in the area with values as high as $1,800,000.00 .

The terms of the Construction loan required the Debtor to first expend the soft costs itself and then apply to the RBLF for reimbursement from the $327,100 Reserve. From July 2022 to December 2022, the Debtor paid for the soft cost of the renovation out of it's own pocket and in December, the RBLF reimbursed the Debtor $10,000.00 out of the Reserve. Thereafter, the RBLF reimbursed the Debtor another $7,000.00 in April of 2023 for soft costs paid by the Debtor. RBLF has only disbursed a total of $17,000.00 from the $327,100 Reserve, since the date of loan closing.

Shortly after paying the April reimbursement to the Debtor, the RBLF, for no reason provided, stated that it would no longer reimburse the Debtor any money from the Reserve for soft costs. Thereafter, the Debtor expended another $10,000.00 without reimbursement from the RBLF while trying to keep the renovation project alive. At the same time the Debtor was paying the RBLF monthly interest payments of $4,446.50 up through July of 2023 and continued to press RBLF to honor it's commitment to fund soft costs.

After July of 2023, the Debtor could no longer fund the soft costs for electrical drawings, & designs, plumbing drawings and designs foundation drawings and designs, and DCA approvals and permit costs and interest cost and the renovation project came to a halt. The Debtor tried to obtain replacement financing but the interest rates had increased and financing market had hardened and the Debtor could not find new financing to complete the renovation project. In December of 2023 the Construction loan came due and on February 1, 2024 and RBLF filed for foreclosure in the District of

7

Columbia. In the foreclosure proceeding, RBLF alleged that the amount due under the Note was $880,197.69 as of the date December 30, 2023.

On March 7, 2024 the Debtor filed for protection under Chapter 11 of the United States Bankruptcy Code. On June 12, 2024 the RBLF filed a Motion for Relief From Stay and Hearing Thereon. The Hearing is now set for July 8, 2024. The U.S Trustee has filed a Motion to Convert the instant case to a Chapter 7 or in the Alternative to Dismiss the Case. Debtor's Counsel, Richard Basile, has filed Motions Opposing both said Motions.

## II. PROPERTY IN THE CHAPTER 11 ESTATE

In its schedules, the Debtor valued the townhome, at $1,600,000.00. This value was derived from a June 14, 2022, appraisal prepared by Kyle Squires of Chessie Appraisals, an appraisal service based in Pasadena, MD. Chessie Appraisals was hired by Washington Capital Partners the initial lender of the previously described construction loan.

As of the filing, the Debtor had no personal property other than the property located at 1815 8th Street NW, Washington DC 20001and $50.00 in a bank account.

## III. CLAIMS AGAINST THE DEBTOR AND ITS PROPERTY AND TREATMENT UNDER THE PLAN OF REORGANIZATION

A Chapter 11 Plan typically divides creditors into classes for purposes of voting and distribution. By law, a class can only contain Claims that are substantially similar in nature. The Plan then specifies the treatment for each Class of Claims. If the Plan varies the treatment of a Class in any way from that treatment to which the Class would legally be entitled absent a bankruptcy filing, the Class is deemed to be "impaired" by the Plan.

8

Only an "impaired" Class is entitled to vote. The claims and their classification and treatment under the Debtor's proposed plan of reorganization are as follows:

**Class 1 – Administrative Claims.--** As of now, the Debtor has two administrative creditors, those being Richard Basile, counsel to the Debtor in Possession, for any fees and expenses the Court may allow; and the Office of the U.S. Trustee for quarterly fees due by statute.

Fees to the U.S. Trustee are due at the end of the month following the end of each calendar quarter, with the amount of fees due based on disbursements during the quarter and figured on a sliding scale. The Debtor so far has made no disbursements. It is anticipated that Alexander Lyles will pay the fees due to the U.S. Trustee for the next quarter and continuing quarters due to the fact that the fees now exceed cash on hand. To the extent permitted, fees falling due prior to confirmation will come from the Debtor's cash on hand and from Alexander Lyles. The amount of counsel fees and expenses which ultimately will be applied for is not known and cannot be estimated with confidence until it becomes clear whether or not the proposed plan will be contested. The fee allowed by the Court, whatever it may be, would be an administrative expense entitled to priority pursuant to 11 U.S.C. §503. As such, the Plan provides, as it must, that all such fees and expenses be paid in full, in cash, unless the holder of the claim agrees to different treatment. Alexander Lyles has agreed to fund any remaining balance of allowed counsel fees and expenses personally in installments of $500.00 per month (unless a lesser sum is due at the time). Mr. Lyles will also fund as necessary the fees and expenses for post-confirmation services. He has signed the Plan as evidence of this agreement.

**Class 2 – Pacific RBLF Funding Trust** The RBLF claim was scheduled as secured by a first deed of trust on the Property. There is some uncertainty as to the exact amount claimed as RBLF has not so far filed a proof of claim.

The RBLF claim, to the extent it is an Allowed Secured Claim, will be paid in full, with interest, under a modified loan structure. The point of this modified structure is to provide for reasonable post-petition interest to RBLF, while the Debtor obtains the replacement financing discussed hereinafter. Under this structure, RBLF will be paid full payment of it's pre-petition principal and interest per it's loan documents and pay post–petition interest at the adjusted rate of nine and one half percent (9.50%) per annum. The Note calls for default interest in the amount of 24% per annum which may be being charged from December 30, 2023. The loan will mature 30 days after Plan confirmation, at which point all principal and any other amounts outstanding will be fully due and payable.

The adjustment of the default interest rate from 24 percent to 9.5 percent is appropriate under the circumstances. The contract rate for this loan is simply too high given current market conditions. The adjustment in this case has been made according to the so-called "formula approach" approved by the Supreme Court of the United States in *Till v. SCS Credit Corporation*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed2d 727 (2004). There the Court adopted a method for arriving at an interest rate for cramdown purposes by adjusting the prime rate upward from one to three points according to the risk factors present in the proposed transaction. Rejecting the argument of the secured creditor that it could make a loan at a higher rate in the marketplace, the Court noted that, in setting a rate for the purpose of cramdown, the bankruptcy court is obligated to "select a rate high

10

enough to compensate the creditor for its risk but not so high as to doom the plan," cf. *Till, supra,* 541 U.S. at 480. The Prime Rate at this time is 8.5%. Under the circumstances present here, only a modest increase of 1% over prime to 9.5% is warranted.

The Debtor has approached an Equity Partner which is interested in joining the Debtor in completing the renovation and sale of the Property. The Equity Partner is Velocity Capital LLC. Velocity Capital is a highly respected developer which has numerous successful development projects completed and underway in Prince Georges County, Maryland. Velocity Capital LLC has participated in projects which have raised 10s of millions of dollars in financing and capital for Property renovation and development. The Debtor expects to receive a term sheet from Velocity Capital LLC, shortly. The term sheet is expected to provide for payoff of the Class 2 Creditor at Plan Confirmation, as set forth herein, new financing for physical renovation construction and soft costs for completion of the Property renovation and monthly payments for the Class 3 and Class 4 Classes, as set forth hereinafter. Velocity Capital will also be providing technical assistance and resources for the townhome development.

Pending full payment, RBLF will retain its lien on the Property as collateral. To the extent not inconsistent with the plan, the original loan documents will remain in force. This Class is impaired.

**Class 3.** This class consists of Allowed Tax Claims entitled to priority pursuant to section 507(a)(8) of the Code. The District of Columbia Office of Tax & Revenue is a creditor allegedly owed $11,171.45 and DC Water is allegedly owed $808.60. There is some uncertainty as to the exact amount claimed as neither The District of Columbia

11

Office of Tax & Revenue nor DC Water have not so far filed a proof of claim. Debtor intends to pay holders of Class 3 claims at a stream of payments based on a five year amortization payment schedule at an interest rate of 6%, with a balloon payment due one year after the Plan Confirmation Date. Payments would therefore be $231.61 per month in the aggregate for one year. The Debtor does not believe there are any other claims within this class.

**Class 4. General Unsecured Creditors Without Priority.** The Debtor has six creditors holding general unsecured claims without priority, those being Juanita Corrine Wood, Washington Gas, Pepco, BTM Engineers, and BEL Engineering. Total claims in this class are $107,277. Debtor intends to pay holders of Class 3 claims at a stream of payments based on a five year amortization payment schedule at an interest rate of 3.5%, with a balloon payment due one year after the Plan Confirmation Date. Payments would therefore be $1,951.56 per month in the aggregate for one year. The Debtor would retain the right to prepay the Class 3 Creditors in whole or part without prepayment penalty or premium. This Class is impaired.

**Class 5.** No distribution of money or property is to be made to any Aligned Development LLC owner equity security holder class on account of it's interests in the Debtor, but will retain it's interest as owner.

Because all creditors will receive payments with a value equivalent to 100 percent of their allowed claims as of the Effective Date of the plan, the absolute priority rule is satisfied.

IV. TAX CONSEQUENCES

The Debtor is a pass-through entity. Consequently, the plan will have no tax consequences insofar as creditors are concerned.

## V. FEASIBILITY

One of the critical tests for confirmation of a plan of reorganization is the test for feasibility. The Debtor is obligated to show that it has the ability to perform.

Leaving aside the amounts the Court may award for counsel fees, the plan provides for payments to creditors commencing on the Effective Date which are estimated as follows:

Class 2 – payment in full within 30 days of Plan Confirmation
Class 3 -- $231.61 monthly for 1 year, beginning 30 days of Plan Confirmation. Then paid in full.
Class 4 -- $1,951.56 monthly for 1 year, beginning 30 days of Plan Confirmation. Then paid in full.

Additionally, during the first year, until Class 4 has been paid in full, while the case remains open administratively, quarterly fees will have to be paid to the Office of the U.S. Trustee. These fees will add approximately $108.33 per month.

The only other expense to be dealt with is the debtor's counsel fees and related expenses as allowed by the Court (including any which may accrue post-confirmation). To the extent that the debtor lacks sufficient funds to pay these in full as of the Effective Date, Alexander Lyles has agreed to be personally liable and to pay the shortfall. Mr. Lyles also would fund directly any payments due for post-confirmation services.

## VII. COMPARISON OF RESULTS UNDER THE PROPOSED PLAN WITH CHAPTER 7 LIQUIDATION

13

A liquidation of the Debtor in Chapter 7 could result in payment in full. On paper, there appears to be a small amount of equity in the property. However, the case is a close one. Creditor claims are estimated as follows for modeling purposes only:

>Class 1 -- $5,000.00 Estimated
>Class 2 -- $1,000,000.00. Estimated since no proof of claim has been submitted
>Class 3 -- $11,980.00
>Class 4 -- $107,277.00
>Class 5 -- 0

Total Claims Estimated: $1,124207.00

Anyone who purchases the Property will have to complete the renovations. In order to obtain a $1,600,00.00 sale price, a Buyer may have to pay as much as $450,000 in Construction and soft costs to renovate the Property. If one then assumes that there would be a commission to a realtor and other costs of sale totaling to 10 percent, or $160,000.00 and the net sale proceeds would be $990,000. Chapter 7 trustee's commissions and counsel fees would also have to be paid. Further, there is no guarantee that the full fair market value would be achieved. The Debtor, however, has performed extensive work on the Property, including preliminary architectural, design, mechanical, drawings & design, electrical drawings, & designs, plumbing drawings and designs, foundation drawings and designs. The Debtor's cost to completion would be significantly less than a new purchaser's, who must start from scratch. Given, also, that there is likely to be some delay in closing a transaction and then distributing funds, at least for some months, it is unlikely, in a hypothetical Chapter 7 scenario, that creditors would receive full payment and probably unlikely that they would receive full payment with interest, so as to provide them with the equivalent of full payment as of the Effective Date.

On the other hand, the Debtor's plan provides for full payment, with interest, so as to provide the equivalent of full payment as of the Effective Date. Accordingly, the Debtor's Plan is in the best interests of creditors under a liquidation analysis.

## VIII. CONCLUSION

The Debtor believes it is clear from this analysis that this Plan offers a better return than any alternative scenario. It is fair, reasonable, and feasible; and all creditors are made whole.

DATED: 7/5/2024            Respectfully submitted,

ALIGNED DEVELOPMENT LLC


/s/ Alexander Lyles
Alexander Lyles
Authorized Agent


/s/ Richard Basile
Richard Basile
6305 Ivy Lane
Suite 510
Greenbelt, MD 20770
Phone (301) 441-4900
Fax 301-441-2404
Email rearsb@gmail.com

Counsel to the Debtor as
Debtor in Possession

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 8th day of July, 2024, a copy of the foregoing Debtor's Disclosure Statement was sent via USPS first class mail, postage pre-paid, and/or electronically to the persons/entities listed on the attached creditor matrix.

*/s/Richard Basile*
*Richard Basile, P.A.*
*6305 Ivy Lane, Suite 510*
*Greenbelt, MD 20770*
*(301) 441-4900*
*(401) 441-2404*
*rearsb@gmail.com*

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0416-0<br>Case 24-11929<br>District of Maryland<br>Greenbelt<br>Mon Mar 11 09:24:07 EDT 2024 | Aligned Development LLC<br>4108 Chariot Way<br>Upper Marlboro, MD 20772-7925 | WCP Fund I LLC as Servicer for Pacific RBLF<br>c/o The VerStandig Law Firm, LLC<br>1452 W. Horizon Ridge Pkwy<br>#665<br>Henderson, NV 89012-4422 |
| BEL Engineering<br>4542 Beech Road<br>Temple Hills MD 20748-6704 | BTM Engineers<br>4712 Babbling Brook Dr<br>Olney, MD 20832-1870 | (p)U S SECURITIES AND EXCHANGE COMMISSION<br>ATLANTA REG OFFICE AND REORG<br>950 E PACES FERRY RD NE STE 900<br>ATLANTA GA 30326-1382 |
| (p)COMPTROLLER OF MARYLAND<br>BANKRUPTCY UNIT<br>301 W PRESTON ST ROOM 409<br>BALTIMORE MD 21201-2383 | District of Columbia Office of Tax & Revenue<br>1101 4th St SW Suite W270<br>Washington DC 20024-4457 | (p)INTERNAL REVENUE SERVICE<br>CENTRALIZED INSOLVENCY OPERATIONS<br>PO BOX 7346<br>PHILADELPHIA PA 19101-7346 |
| Juanita Corrine Wood<br>12324 Quilt Patch Lane<br>Bowie MD 20720-4359 | Pepco<br>PO Box 13608<br>Philadelphia PA 19101-3608 | Prince George's County, Maryland<br>Office of Finance<br>1301 McCormick Drive, Ste. 1100<br>Largo, MD 20774-5416 |
| Secretary of the Treasury<br>15th and Pennsylvania Ave., N.W.<br>Washington, DC 20220-0001 | State of Maryland DLLR<br>Division of Unemployment Insurance<br>1100 N. Eutaw Street, Room 401<br>Baltimore, MD 21201-2226 | (p)US ATTORNEY'S OFFICE FOR THE DISTRICT OF<br>36 S CHARLES STREET FOURTH FLOOR<br>BALTIMORE MD 21201-3020 |
| US Trustee - Greenbelt<br>6305 Ivy Lane, Suite 600<br>Greenbelt, MD 20770-6305 | Washington Capitol Partners<br>840 I Greensboro Dr Suite 960<br>McLean, VA 22102 | Washington Gas<br>PO Box 37747<br>Philadelphia PA 19101-5047 |
| Richard S. Basile<br>6305 Ivy Lane, Ste. 416<br>Greenbelt, MD 20770-6309 | | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Branch of Reorganization<br>Sec. & Exch. Commission<br>3475 Lenox Road NE (Suite 1000)<br>Atlanta, GA 30327-1232 | Comptroller of the Treasury<br>Compliance Division, Room 409<br>301 W. Preston Street<br>Baltimore, MD 21201 | Internal Revenue Service<br>Centralized Insolvency Section<br>PO Box 21126 (DP-N-781)<br>Philadelphia, PA 19114 |
| U.S. Attorney-District of MD<br>4th floor<br>36 S. Charles St.<br>Baltimore, MD 21201 | | |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)For Internal Use Only | (u)DC Water<br>PO Box 97200<br>Washington | End of Label Matrix<br>Mailable recipients 18<br>Bypassed recipients 2<br>Total 20 |